[S. F. No. 13258. In Bank.—August 30, 1930.]

PHILLIPS–HOLLMAN, INC. (a Corporation), Appellant, v. PEERLESS STAGES, INC. (a Corporation), Respondent.

C. Morton Booth for Appellant.

Preston Higgins and Alfin N. Nelson for Respondent.

Herbert Choynski, Sidney Rhein, John J. Barrett, Frank I. Barrett, O'Melveny, Tuller & Myers, Louis W. Myers, Elbert W. Davis, J. H. Hoffman and Albert A. Rosenshine, *Amici Curiae.*

RICHARDS, J.—This appeal is from a judgment of the Superior Court in and for the County of Alameda in the defendant's favor, based upon the findings and conclusions of the trial court that the action was prematurely brought. The facts of the case are undisputed, and so far as they are necessary for this opinion may be briefly stated as follows:

On February 27, 1925, the plaintiff corporation by written instrument leased and demised unto James F. Malony, Louis Klein and George H. Gilson certain described premises situate in the city of San Jose, and being a portion of the ground floor of a certain building known as Auzerais Building, together with a certain portion of the space in the rear thereof partly occupied by another structure, and also certain approaches thereto leading to and from Market Street, for a term of ten years, at a total rental of $87,600, payable in equal monthly installments of $600 per month, each in advance, on the first day of each and every month during the first two years of said term, and the sum of $700 per month, payable in advance on the first day of each and every month during the next three years of said term, and the sum of $800 per month, payable in advance on the first day of each and every month during the remaining five years of said term. It was, however, elsewhere recited in said lease that it was anticipated by the parties thereto that at or before the commencement of the term thereof the lessees would have made a lease to other parties of a certain portion of the premises for a term co-

existent with the terms of said lease and for a rental of $300 per month for the first five years thereof and of $350 per month for the second five years thereof; and that should said lessees not succeed in making such anticipated lease, or should the lessors not have found another lessee therefor at said rental, then and in that event the rental above provided for should be abated at the rate of $300 per month until such other lessee or lessees could be found. The lease also contained the following provisions:

"Said lessees hereby agree that if the rental hereunder reserved be not paid within five days after the same becomes due and payable hereunder, or if default be made in the performance of any of the other covenants on their part herein contained, and shall continue for five days after written notice thereof given to the lessees by the lessor, such default or breach shall, at the option of the lessor, work a termination of this lease to the same extent and with all the legal incidents as if the term hereof had expired by efflux of time, and it shall then be lawful for the said lessor, his agent or agents, to reenter the premises and remove all persons therefrom and to repossess himself of said premises as of his original estate."

The lease also contained a provision to the effect that should the lessees vacate or abandon the premises prior to the expiration of the term or should the lease prior to that time be determined in any manner in the lease agreed upon, the lessor may enter in and upon the premises and take possession thereof, notwithstanding, the lessees should not be released from liability for the full rental, but that the lessor might rent the premises after diligent effort to obtain the best obtainable rental, and the lessees should "be liable unto the said lessor for the balance of the full term hereof for the difference between the said rental procured by said lessor and the rental herein called for."

The lessees named in the lease assigned the same, with the consent of the lessor, to the defendant in the action, who entered into possession of the premises described therein under the aforesaid terms of the lease, and continued to occupy the same until on or about December 31, 1925. The defendant paid to the plaintiff rental for the premises in the sum of $300 per month up to and including the month of November, 1925, and the plaintiff accepted said rental in

full of all claims against the defendant for the rent of the premises up to and including said date. The defendant, however, defaulted in the payment of said rental for the month of December, 1925, and on the fifteenth day of said month the plaintiff served upon the defendant a written demand that the defendant immediately vacate the premises. Thereupon and on or about the thirty-first day of December, 1925, the defendant did vacate the premises and has not thereafter used or occupied the same or any portion thereof. Thereafter and during the month of January, 1926, the plaintiff commenced an action in said superior court to recover the entire amount of the rental due or to become due it under the terms of said lease, which action went to trial and resulted in the making and entry of findings and of a judgment therein to the effect that the plaintiff was entitled to recover from the defendant the sum of $300 as the rental of said premises for the month of December, 1925, but that as to the recovery of any other or further rental not then due the action was prematurely brought. Said judgment was not appealed from and became final. Thereafter and in the month of May, 1927, plaintiff elected to cancel and determine said lease as of the first day of June, 1927, for the reason that the defendant had paid no rental thereunder for the months of January to December, inclusive, 1926, and from January to May, inclusive, 1927; and on May 12, 1927, notified the defendant in writing of such cancellation and determination. Between the dates of January 1, 1926, and June 1, 1927, the plaintiff made diligent effort to rent to other parties said premises and succeeded in so doing, with the result that the greatest amount of rental which it was able to obtain therefor for the period between January 1, 1926, and June 1, 1927, was the sum of $2,297.50. On or about the tenth day of June, 1927, the plaintiff commenced this action for the recovery of the sum of $8,002.50, the same being the difference between the amount which the plaintiff alleged to have become due under the terms of the lease between the first day of January, 1926, and the first day of June, 1927, and the above amount which it had received from the re-rental of the premises during a portion of said time. The defendant answered, setting forth the fact of the making and entry of the prior judgment and pleaded the same in bar.

The defendant also set forth in its answer that the total amount of rental in any event due to the plaintiff under the terms of said lease for said period was not in excess of $300 per month, and that as to said amount and recovery thereof this action had been prematurely brought. The cause upon these issues went to trial, with the result that the trial court made and entered its findings as to the making and entry of said prior judgment and as a result, evidently based upon its interpretation thereof and of the nature of the present action, made its further finding and conclusion of law that this action had been prematurely brought, and that the plaintiff was entitled to take nothing thereby, and that judgment be entered, and the same accordingly was entered, in favor of the defendant to the foregoing effect. It is from such judgment that the present appeal has been taken.

■ The rule is well settled that where a lease has been repudiated by a tenant, and the premises abandoned, and there are no covenants in the lease to the. contrary, the landlord has a choice of but two remedies:

1. He may rest upon his contract and sue for each installment of rent as it falls due. If this alternative be selected, obviously the action must be limited to accrued installments, and no recovery can be had for future installments, because, the lease being still in existence, no obligation to pay the rent arises until each installment falls due.

2. He may take possession of the premises, relet the same and recover from the tenant any damages suffered thereby. Such damages will be the· difference between the amount secured on the reletting and the amount provided for in the original lease. If this alternative be selected, in the absence of a covenant in the lease to the contrary, and perhaps where the landlord has relet for the balance of the entire term (which latter point we do not here decide), the law is well settled that the landlord cannot recover in installments, but must bring his action at the expiration of the original term, at which time the damages for the first time can be ascertained. (*Oliver* v. *Loydon*, 163 Cal. 124 [124 Pac. 731]; *Bradbury* v. *Higginson*, 162 Cal. 602 [123 Pac. 797]; *Hermitage* v. *Levine*, 248 N. Y. 333 [59 A. L. R. 1015, 162 N. E. 97, 98]; see, also, *Respini* v. *Porta*, 89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967].)

■ The action heretofore mentioned, commenced in January, 1926, in which the trial court gave judgment for $300 for the December, 1925, rent, but denied recovery for the future rent, is in no sense a bar to this action. That action was strictly an action for rent. The December rent had accrued, under the terms of the lease, on December 1st, before the tenant had abandoned the premises. At that time (January, 1926) the lease had not been terminated, but was still in existence, and therefore no action could be successfully maintained until the rent accrued. ■ The notice of December, 1925, to deliver up possession of the premises did not operate to terminate the lease, but was merely the notice provided for in section 1161 et seq. of the Code of Civil Procedure, to pay rent or quit the premises.

■ Ordinarily the reletting of the premises amounts to an election to terminate the lease and to hold the tenant for damages, and in such case, as we have seen under the authorities, *supra,* the action cannot be successfully maintained until the termination of the original term. The lease, however, may be so drawn as to contain provisions by which the application of that rule may be evaded. This was clearly illustrated by the case of *Hermitage* v. *Devine, supra,* where the tenant was holding under a long term lease expiring in 1945. After a few months of the lease period had passed, the landlord dispossessed the tenant by summary proceedings for failure to pay rent. The landlord thereupon relet the premises for an amount less than that provided for in the original lease and for periods less than that provided in the original lease. This action was then commenced by the landlord, before the expiration of the original term, for the difference then accrued between the amount secured on the reletting and the amount stipulated in the original lease. It was held that the action was prematurely brought. The court, however, Judge Cardozo writing the opinion, after declaring the general rule to be as set forth in the authorities, *supra,* proceeded to state: "No doubt, a damage clause can be drawn in such a way as to make a tenant responsible for monthly deficits after the reentry of his landlord, and this without charging the landlord with a duty to account for a surplus in other seasons. Such a clause will be found in *McCready* v. *Linden-*

*born,* 172 N. Y. 400 [65 N. E. 208], where the lease was to the effect that the tenant would pay the difference in rent 'in equal monthly payments as the amount of such difference shall from time to time be ascertained.' A clause similar in effect, though more uncertain in its terms, will be found in *Mann* v. *Munch Brewery,* 225 N. Y. 189 [121 N. E. 746], where the tenant was to 'continue liable for the payment of rent and the performance of all of the other conditions herein contained.' " We are in accord with the views above expressed. It follows that unless the covenants of this lease are of such a nature as to keep the liability to pay *rent* as such alive, this action must be held to have been prematurely brought. It will be noted that in *Mann* v. *Munch Brewery,* quoted with approval in *Hermitage* v. *Devine, supra,* it was held that a covenant that the tenant was to "continue liable for the payment of rent and the performance of all the other conditions herein contained" was sufficient to take the case out of the rule and to permit recovery for the difference between the accrued rent and the amount secured in a reletting, even though the term provided in the lease had not expired. In *Kottler* v. *New York Bargain House, Inc.,* 272 N. Y. 28 [150 N. E. 591], a decision also by Chief Justice Cardozo, the covenant which was held to take the case out of the general rule above set forth was to the effect that "if the premises . . . become vacant during the said term, the landlord or his representatives may reenter the same . . . and relet the said premises as the agents of the said tenants and receive the rent therefor, applying the same, first, to the payment of such expenses as they may be put to in reentering, and then to the payment of the rent due by these presents; the balance, if any, to be paid over to the tenants, who shall remain liable for any deficiency." It was held that the liability for rent continued after the taking of possession and reletting by the landlord, under this covenant, and that an action could be maintained for such accrued deficiency before the end of the term. In the lease under consideration several clauses are found which indicate the foregoing intent very much more strongly than the phrase used in the Brewery case, *supra,* or the covenant in the Kottler case, *supra;* in fact, it would appear that the parties to the present lease had the rule illustrated by the Loydon, Bradbury and Hermitage cases

in mind, and so drew the lease as to evade the application of the principle set forth in the earlier cases above cited. Among other things the lease provides: "Said lessees further agree that should they vacate or abandon the demised premises prior to the expiration of the term hereunder provided for . . . and the said lessor shall enter in and upon said premises and take possession thereof, *notwithstanding the same* the said *lessees shall not be released from liability for the full rental herein called for,* but said lessor may let said premises, in whole or in part, and upon such terms as his judgment may dictate (the lessor, however, agreeing to make diligent effort to realize the best obtainable rent therefor) and the said lessees shall be liable unto the said lessor, for the balance of the full term hereof, *for the difference between the said rental procured by said lessor and the rental herein called for."* Another clause provides that if the tenant default in the payment of rent, such default shall "at the option of the lessor, work a termination of this lease *to the same extent and with all the legal incidents as if the term hereof had expired by efflux of time."* These clauses clearly show an intent that, at the option of the lessor, he could keep the liability of the tenant to pay rent alive (as distinguished from the liability to pay damages) even though the landlord had taken possession of the premises and relet the same. Although the language used in this lease is not as strong as that used in *McCready* v. *Lindenborn, supra,* it is much clearer and far more certain than that used in the Brewery case, and is similar in effect to that used in the Kottler case. The test applied in each of these cases is whether the parties show by their language that they intended, even though the tenant abandons the premises and the landlord relets them, to keep the liability to pay *rent* alive, as distinguished from the ordinary liability to pay damages. If such an intent appears the landlord may sue for the difference between the reletting price and the original lease price as each installment accrues, even though the entire lease period has not expired. The parties have clearly shown such an intent by the provisions of this lease, and it therefore follows that the trial court was in error in holding that this action had been prematurely brought. It is to be noted that the action herein involved is one for accrued installments less the amount received on

reletting up to the date of the formal termination of the lease. No question of future installments is herein involved.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Waste, C. J., Preston, J., Seawell, J., and Curtis, J., concurred.