[L. A. No. 11089. In Bank.—January 22, 1932.]

J. P. TREFF, Respondent, v. J. GULKO, Appellant.

Burke, Camarillo & Herron, Mark L. Herron and Robert B. Camarillo for Appellant.

H. C. Eastham for Respondent.

CURTIS, J.—The petition for a transfer of this cause to this court was granted for the reason that, in view of the authorities cited in said petition, we were of the opinion at the time that further consideration should be given to certain questions discussed and decided in the opinion of the appellate court. It was held in said decision that the action having been instituted prior to the expiration of the original lease was prematurely brought, citing *Phillips-Hollman, Inc.*, v. *Peerless Stages, Inc.*, 210 Cal. 253 [291 Pac. 178]. Plaintiff seeks to differentiate that case and kindred cases relied upon by defendant from the present action in that in those cases a recovery was asked for the entire amount of the rent due, and also for that which might become due in the future under the terms of the lease, while the present action is for the recovery only of the amount of rent due at the date

of its institution. We think plaintiff misconceives the grounds upon which these decisions cited by the District Court of Appeal are based. Plaintiff's action is not one in contract to recover the rent due, but in damages for the breach of the terms of the lease. (*Respini* v. *Porta*, 89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967]; *Hermitage Co.* v. *Levine*, 248 N. Y. 333 [59 A. L. R. 1015, 162 N. E. 97]; *Kottler* v. *New York Bargain House*, 242 N. Y. 28 [150 N. E. 591].) The measure of plaintiff's damage, it is true, may be the difference between the rent called for by the terms of the lease and the amount received by him upon his reletting the leased premises. The question, however, is, when does this damage accrue? This question is answered by the court in the case of *Hermitage Co.* v. *Levine, supra* (cited by this court with approval in the case of *Phillips-Hollman, Inc.*, v. *Peerless Stages, Inc., supra*). "In the absence of a provision [in the lease] that points with reasonable clearness to a different construction, a liability for damages resulting from a reletting is single and entire, not multiple and several. The deficiency is to be ascertained when the term is at an end." In that action the plaintiff sought to recover, as in the present action, damages suffered by the landlord through the deficiencies of rents computed up to the commencement of said action. The court further said in that case, "The tenant when ejected [and we think the same rule would apply when the tenant voluntarily abandons the leased premises] ceases to be a tenant. What he covenants to pay is the damage, not the rent. To hold him for monthly deficits is to charge him with the obligations of a tenant without any of the privileges. He must pay in the lean months, without recouping in the fat ones. He must do this, though it may turn out in the end that there has been a gain and not a loss. A liability so heavy may not rest upon uncertain inference." The scant authority cited by the plaintiff in support of his right to maintain this action is not applicable to the facts in the present action. The question of plaintiff's right to waive future damages and sue for that sustained up to the commencement of this action is not here involved. The question presented under the facts of this case is the right of the plaintiff to maintain any action whatever to recover damages for the defendant's breach of the terms of the lease until the ex-

piration of the terms of the lease. The authorities are clearly to the effect that any action brought prior to the expiration of the term of the original lease is prematurely brought. The only exception to this rule appears to be that when by express terms of the lease the tenant makes himself responsible for monthly, or other term deficits after the entry of the landlord, then an action will lie to recover these periodical deficits. (*Hermitage Co.* v. *Levine, supra.*) But as noted by the District Court of Appeal, the lease here involved contains no such provision nor any similar thereto.

It was further held in the decision in this case by the District Court of Appeal that the plaintiff could not recover in this action against the defendant who was the assignee of the original lessee for rent due after the surrender of possession of the leased premises by said defendant for the reason that defendant did not sign the original lease nor any acceptance of said lease, and entered into no new agreement to assume the obligation of the lease or to pay the rent. Respondent in his petition for a transfer of this action to this court contended that the opinion of the District Court of Appeal releasing the defendant from liability under said lease was contrary to and in conflict with the following: *Baker* v. *Maier & Zobelein Brewery,* 140 Cal. 530 [74 Pac. 22], *Bonetti* v. *Treat,* 91 Cal. 223 [14 L. R. A. 151, 27 Pac. 612, 613], and *Lopizich* v. *Salter,* 45 Cal. App. 446 [187 Pac. 1075, 1076]. We discover no conflict between the opinion of the District Court of Appeal in the present action and any of the three decisions just referred to. The defendant herein paid all rent due from him while in the possession of the leased premises, and the plaintiff in this action seeks to recover damages for defendant's failure to pay rent of the leased premises after the defendant had abandoned the possession thereof. While there may be some general language in the above cases relied upon by the plaintiff to support his claim that the defendant has made himself liable for the payment of rent under the lease after the abandonment by the latter of the leased premises, yet a close study of the opinions in these cases makes it clear that none of them can be considered as sustaining plaintiff's claim. The action of *Baker* v. *Maier & Zobelein Brewery, supra,* was brought to recover rent of the premises during the time the defendants were in the use, occupancy and possession of

the same. In *Bonetti* v. *Treat, supra,* while not entirely clear, we think it sufficiently appears from the text of the opinion therein that the defendant Porter who was the assignee of the original lessee, agreed in writing "to pay all rent that may fall due, from time to time, by virtue of the provisions of the lease". By reference to the original record in the Bonetti case, we find that the written assignment of the lease was signed by Porter, and contained the agreement to pay the rent just quoted. This fact differentiates that case from the present one and renders it of no authoritative value on any question involved herein. The case of *Lopizich* v. *Salter, supra,* may also be readily differentiated from the present one. In that case the assignment was not a mere naked assignment, but contained a provision that the assignee "hereby accepts said assignment, and hereby obligates itself upon said lease from and after November 1st, 1913". It is true this assignment was not signed by the assignee of the lease, but the court held that by accepting the lease thus assigned, the assignee was bound by the terms of said assignment. The assignment of the lease here involved, as shown by the District Court of Appeal, contains no covenant on the part of the assignee to pay the rent, and in accepting the same the assignee did not even impliedly agree to pay the rent. He was, of course, liable for the rent so long as he remained in possession of the leased premises, but without any agreement express or implied he could not be held beyond the time of his actual occupation of the premises. (See authorities cited in opinion of the District Court of Appeal.)

From what we have said it is apparent that we find no conflict between the opinion of the District Court of Appeal in this case and the authorities cited by plaintiff and considered herein. We, therefore, approve said opinion, and adopt it in connection with the foregoing statements as the opinion of this court. The opinion, written by Justice *pro tem.* Lamberson, and concurred in by Acting Presiding Justice Marks and Justice Jennings of the Fourth District Court of Appeal, is as follows:

"On August 25, 1924, respondent, Treff, leased to two persons certain storeroom premises at San Pedro for the term of five years, beginning September 1, 1924, and for a total rental of $9,000, payable in monthly installments

graduated from $125 per month for the first year to $175 per month during the fifth year. The lease was assigned to appellant, the lessor consenting thereto, on February 2, 1925, but appellant signed no acceptance or agreement to take over the lease. He occupied and paid rent for the premises from February 2, 1925, up to and including the month of February, 1926. The court found that appellants entered into possession of the premises and paid such rentals. No objection has been made to such finding, and the evidence is sufficient to support it. Appellant paid rent at a reduced amount during a portion of the time the premises were occupied by him, by agreement with respondent. In December, 1925, and January, 1926, the two parties had some conversations about the rent, and the lessor told the appellant that the rent, beginning with January, would be $150, and the appellant said, in effect, that he could not pay that amount because of business conditions, and that he was going to move out. He did quit the premises during the early part of February, 1926, and paid no further rents.

"The premises, apparently, remained vacant until January 1, 1927, when respondent leased them for $75 per month for the first eighteen months of a term, and at the rate of $100 per month for the following eighteen months, the total length of such term being in excess of the unexpired portion of the term specified in the original lease.

"On March 2, 1926, respondent lessor gave written notice to appellant that he refused to accept appellant's 'attempt to surrender the possession of the premises', and demanded payment of the rent up to and including the month of March. Other demands for rent were made at later dates, both in writing and orally. The complaint in this action was filed on March 12, 1928. The court found that plaintiff notified defendant lessee that he would hold defendant liable for the payment of all of the rent reserved in the lease, and that plaintiff would re-lease the premises to the best advantage for the account and benefit of defendant and that said premises were relet for the benefit and account of defendant and for the best price obtainable therefor. The court gave judgment in favor of the respondent lessor in the sum of $2,625 after deducting the amount received by reason of re-letting the premises.

"The appellant lessee appeals from the judgment and contends that plaintiff and respondent accepted the surrender of the premises from appellant on January 1, 1927, by reletting the premises without notice to the appellant that he intended to relet for the benefit and account of the appellant. He further contends that the evidence is insufficient to support finding IV in which the court found that the reletting was after notice, and for the benefit and account of defendant.

"The only testimony in regard to the matter is found in the testimony of respondent, Treff, and is as follows:

" 'Q. Now at the time you rented this store at $75.00, when did that begin?

" 'A. January 1, 1927.

" 'Q. And at what time, did you have any conversation with Jacob Gulko in reference to renting the store to someone else?

" 'A. I went to Mr. Gulko before that.

" 'Mr. Camarillo: What Gulko?

" 'A. To J. Gulko, and asked him to try to rent that store if he could and I would do the—somebody that I liked to rent it, and I would do the best I could to rent it. But he tried to tell me that he didn't have anything to do with it; so I done the best I could to rent the store.

" 'Q. (By Mr. Mason.) What did he tell you at that time?

" 'A. He says that he didn't have anything to do with it.

" 'Q. What did you tell him?

" 'A. Well I didn't tell him anything, I just went my way, there was no use to argue with him.'

"Under date of December 9, 1927, almost a year after the reletting of the storeroom, respondent's attorney addressed a 'memorandum of rent due' from appellant to respondent and concluded the memorandum with the following statement: 'The premises involved are now under lease at the best price obtainable, to-wit, $75.00 per month for the first 18 months of the term, and $100.00 per month for the next 18 months of the term, said term commencing January 1, 1927. In computing the rents due from Mr. Gulko, credit has been given for the rents payable under the present lease as shown above.' Aside from the testimony already quoted the record is silent as to what the respective parties did in

regard to exercising any control over the premises after their abandonment by appellant.

"The lease contained no provisions in regard to reletting. It provided in substance that should default be made in the payment of any portion of the rent, when due, and for thirty days thereafter, or in any of the covenants contained in the lease, the lessor, his agent or attorney might reenter and take possession of the premises, remove all persons therefrom, and at his option terminate the lease.

"The rule is well settled that upon the surrender of leased premises by a lessee before the expiration of the term provided for by the lease, the owner of the premises has three remedies; first, he may do nothing and sue the lessee as each instalment of rent becomes due, or for the whole thereof when it becomes due; second, he may treat the lease as terminated and retake possession of the premises and use the same for his own purposes as the exclusive owner thereof, or third, he may retake possession of the premises for the tenant's account and hold the tenant in damages for the difference between the rentals provided for in the lease and what in good faith he was able to procure from a reletting. (*Siller* v. *Dunn*, 103 Cal. App. 154 [284 Pac. 232].)

In the case of *Phillips-Hollman, Inc.*, v. *Peerless Stages, Inc.*, 210 Cal. 253 [291 Pac. 178, 180], the court said at page 258:

" 'The rule is well settled that where a lease has been repudiated by a tenant, and the premises abandoned, and there are no covenants in the lease to the contrary, the landlord has a choice of but two remedies:

" '1. He may rest upon his contract and sue for each instalment of rent as it falls due. If this alternative be selected, obviously the action must be limited to accrued instalments, and no recovery can be had for future instalments, because, the lease being still in existence, no obligation to pay the rent arises until each instalment falls due.

" '2. He may take possession of the premises, relet the same and recover from the tenant any damages suffered thereby. Such damages will be the difference between the amount secured on the reletting and the amount provided for in the original lease. If this alternative be selected, in the absence of a covenant in the lease to the contrary, and

perhaps where the landlord has relet for the balance of the entire term (which latter point we do not here decide), the law is well settled that the landlord cannot recover in instalments, but must bring his action at the expiration of the original term, at which time the damages for the first time can be ascertained. (*Oliver* v. *Loydon,* 163 Cal. 124 [124 Pac. 731]; *Bradbury* v. *Higginson,* 162 Cal. 602 [123 Pac. 797]; *Hermitage* v. *Levine,* 248 N. Y. 333 [59 A. L. R. 1015, 162 N. E. 97]; see also, *Respini* v. *Porta,* 89 Cal. 464 [23 Am. St. Rep. 488, 26 Pac. 967].)''

''In the present case the respondent·having elected to take possession of the premises and relet the same and to rest upon his action for damages, we must conclude, upon the authority of the last-quoted case, that his action was prematurely begun and that the judgment awarding damages to him must be reversed.

''There is a further and more serious reason why the judgment of the trial court cannot be sustained. The only allegations appearing in the complaint in regard to the assignment of the lease and the assumption of its obligations by appellant are found in paragraph II and are as follows: 'That thereafter and during said term, to-wit, on the 2nd day of February, 1925, the said Peretz and Addleson in writing assigned and transferred unto the said defendant all their right and interest in and to said lease and premises, and thereupon their rights therein and thereto became, and ever since have been, vested in the defendant, and the defendant thereupon entered into possession and remained in possession of said premises under said lease so assigned to him.'

''The court found in substance that it was true that after the making and delivery of said lease by the respondent to the original lessees on February 2, 1925, said lessees in writing assigned and transferred to appellant all their right and interest in and to said lease and leased premises and the said lease thereon, and that thereupon their rights therein became, and. ever since have been, vested in the appellant, and' that the appellant thereupon entered into possession and remained in possession of said premises under said lease so assigned to him and occupied said premises and 'promised to pay said rent'. The finding that appellant promised to

pay the rent is not sustained by the evidence, the only basis for such a finding being appellant's occupancy of the premises and his payment of the rent during the period between February 2, 1925, and the month of February, 1926. The appellant did not sign the original lease or any acceptance of such lease and entered into no new agreement to assume the obligations of the lease or to pay the rent.

"In the absence of fresh contractual stipulations, there is no privity of contract between the assignee of the lessee and the landlord (*Farber* v. *Greenberg,* 98 Cal. App. 675 [277 Pac. 534],) and when a tenant holds under a mere naked assignment of a lease, his liability is, as to the landlord, limited to his occupancy of the premises and terminates with his abandonment of possession. (*Chase* v. *Oehlke,* 43 Cal. App. 435 [185 Pac. 425].) The subject is carefully discussed in 15 California Jurisprudence at page 753, where it is said: 'Privity of contract between landlord and lessee, however, is not affected by the latter's assignment, but continues until the end of the term notwithstanding he is no longer in possession of the premises. In the absence of fresh contractual stipulation, there is no privity of contract between the assignee and the landlord. But the assignee may, by express stipulation to be bound by the covenants of the lease, create a privity of contract between himself and the landlord, which will also endure till the term expires. By virtue of such an agreement the assignee becomes liable upon and entitled to the benefit of all the covenants of the lease as such. It seems, however, that to establish privity of contract between landlord and assignee, the necessary agreement must be made between them themselves.'

"See, also, *Bush* v. *Bastian et al.,* 112 Cal. App. 644 [297 Pac. 976], decided March 17, 1931, in this court, wherein it was held that under the allegations of a complaint in which it was alleged in substance that a lessee assigned a certain lease to the appellant with the express stipulation that the lessee would continue to be bound by all of the terms of the lease, and that pursuant to such assignment the appellant went into possession and occupation of certain premises, the liability of the appellant assignee to the lessor was limited to the rentals accruing prior to the assignee's abandonment of the possession of the leased premises.

"In view of the conclusions which we have announced, we consider it unnecessary to discuss the various questions treated in the briefs of appellant and of the respondent."
For the foregoing reasons the judgment is reversed.

Langdon, J., Preston, J., Seawell, J., Richards, J., Waste, C. J., and Shenk, J., concurred.