**WAKE DEVELOPMENT CO. et al. v. AUBURN-FULLER CO.**

**CORD v. McFIE.**

**No. 7337.**

Circuit Court of Appeals, Ninth Circuit.

June 12, 1934.

Young & Young and Milton K. Young, all of Los Angeles, Cal., for appellant.

Chandler, Wright & Ward and John F. Gilbert, all of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The appellant filed a claim in the above-entitled receivership matter for $637,200, plus interest, costs, and attorneys' fees, based upon a ten-year lease between the defendant in the receivership proceeding, Auburn-Fuller Company, the tenant, and the appellant, E. L. Cord, the landlord, for certain real estate in the city of Los Angeles, Cal. The total rental reserved under the lease was $648,000 payable in monthly installments of $5,400 each. The claim filed for $648,000 less two months' rent is rather indefinite as to the basis upon which the amount is claimed. It is alleged in the claim, as follows:

"That Auburn-Fuller Company was and is indebted to E. L. Cord in the sum of six hundred thirty seven thousand, two hundred dollars ($637,200) plus interest at 6% per annum from June 10, 1932, to Mar. 31, 1942 and costs incurred in connection with the default of Auburn-Fuller Co. under the lease herein mentioned, including a reasonable attorney's fee, all as provided in said lease. * * *

"This claim is based upon that certain lease executed the 14th day of May, 1931, between E. L. Cord as lessor and Auburn-Fuller Co. as lessee, copy of said lease being attached hereto and hereby made a part hereof."

The claim was apparently treated in the court below as a sufficient claim for whatever rights the appellant had under the lease or for damages by reason of its breach. The claim was disallowed by the special master, who was appointed for the purpose of considering claims. The findings and conclusions of the master were excepted to by the claimant. The court sustained the conclusions of the special master upon the ground that the amount of damages for the breach of the lease was uncertain and the claim was premature. The court in that regard stated as follows:

"After a careful examination of the rec-

ord and briefs I have concluded that the master's findings should be sustained. That is: 1. The claim is prematurely made and uncertain in amount. 2. No proof was offered sufficient to warrant a finding as to the difference between the lease rental amount and the future rental value of the property."

From this order the present appeal is taken.

The lease which is dated May 14, 1931, provided that the landlord should construct a building, the leased premises, for the use of the tenant, and that, when completed, the tenant should occupy the building and premises and begin the payment of rent therefor. The building was completed in March, 1932, and the tenant began to occupy the premises April 1, 1932, at a monthly rental of $5,400, and paid rent for the months of April and May. On June 9, 1932, the appellee was appointed as receiver for the tenant. On July 2d the receiver disaffirmed the lease, vacated the premises, and redelivered the same to the landlord under an agreement of the same date providing, among other things, that:

"The re-entry of said premises by E. L. Cord as herein provided, shall not constitute a waiver or affect in any way whatsoever the right of second party to file a claim for any damages to which he may be entitled to receive on account of said lease of May 14, 1931 hereinabove mentioned and any default which may have occurred thereunder, all rights in that regard being specifically reserved by second party."

On July 5th the receiver petitioned the court for confirmation of his act of disaffirmance of the lease and of his notice of July 2d to that effect to the lessor, and on July 5th the judge confirmed and approved the action of the receiver in disaffirming the lease. On July 5th the appellant leased the premises to the Auburn California Company on a month to month tenancy for the sum of $2,500 per month payable monthly. The trial judge made an order that all claims against the defendant should be filed on or before July 31, 1932. In pursuance thereof claimant filed his claim on July 29, 1932. The lease contained the following provisions:

"Should any other person than the lessee named herein secure possession of said premises, or any part thereof, under any writ of attachment, or by reason of any receivership or proceeding in bankruptcy or other operation of law in any manner whatsoever, the lessor may, at his option and without demand or notice of any kind whatsoever, re-enter and take possession of said premises and remove all persons therefrom. * * *

"Seventh: Should any of the rents herein reserved be due and unpaid, or should the lessee vacate or abandon said premises, or should the lessee be in default in any other covenant or condition of this lease, and should any such default continue for thirty (30) days after service upon the lessee at its last known address of written notice thereof, lessor, at his option, at any time after the expiration of said thirty days after service of said notice of default, and with or without process of law, may re-enter and take possession of said premises under any one or more of the conditions described in this paragraph of this lease, said lessor shall not be liable for damages of any kind, and said lessor may, at his option, either terminate this lease, and recover from the lessee all damages caused by any breach thereof by the lessee, together with the rent then unpaid, including all reasonable attorney's fees which may be incurred in recovering possession of said premises and in collecting such damages or such rents; or said lessor may relet said premises or any part thereof, for all or any part of the remainder of said term, to a tenant or tenants satisfactory to him, and at such monthly rental as he may with reasonable diligence be able to secure, and should such monthly rental be less than that herein agreed to be paid by the lessee, the lessee agrees to reimburse the lessor for all reasonable expenses which may be incurred by the lessor in reletting said premises, and to pay said lessor monthly in advance on the first day of each month the amount of any such monthly deficiency in said rent. No waiver by the lessor of his right to enforce any provision hereof after any default on the part of the lessee shall be deemed a waiver of his right to enforce each and all of the provisions hereof upon any further or other default of the lessee. No re-entry of said premises by the lessor as herein provided shall be construed as an election on his part to terminate this lease, unless written notice to that effect is delivered to the lessee or mailed to said lessee at its last known address; and all remedies herein expressly given to the lessor shall be cumulative to each other and to any other legal or equitable remedy which the lessor might otherwise have in the event of a breach by the lessee, and the exercise of one right or remedy by the lessor shall not in anywise impair his right

to any other remedy until all obligations herein imposed on the lessee have been fully performed. The lessee shall pay interest on all rent or other sums in arrears at the rate of 6% per annum, from the date when the same became due until paid. In any action or proceeding which the lessor may be required to prosecute to enforce his rights hereunder, and particularly in any action to collect rent hereunder, the lessee agrees to pay all costs incurred by the lessor therein, including reasonable attorney's fees."

In order to prove the amount of his damage the appellant undertook to prove the rental value of the property at the time of the disaffirmance of the lease by the receiver and offered evidence tending to show that the rental value at that time was from $1,750 to $1,800 per month. The special master held that this evidence was insufficient to establish the rental value of the premises during the balance of the term. The trial court confirmed this finding. Appellant complains of this finding as inconsistent with the only testimony offered upon that subject. The finding of the special master was based upon the fact that the testimony of the witnesses related only to the rental value of the premises at the time of the disaffirmance of the lease.

Joe Toplitzky, one of the appellant's witnesses, testified, "In my opinion the rental value of that building is about $1740 per month," and on cross-examination he testified, "I am unable to tell what value the Cord building for rental purposes will be five years from today. I am unable to answer this. I wish I could." T. N. Canfield, another of appellant's witnesses, testified on direct examination, "In my opinion the reasonable rental value of that property today is about $1750 per month." On cross-examination he said, "I cannot tell you how much that building will rent for five years from today, nor two years." Don P. Smith testified that he was the manager of the present tenant of the building and that they were paying $2,500 rental per month on a month to month tenancy. It is clear from this testimony that there was no attempt on the part of the witnesses to state the rental value of the premises during the entire term. However, we do not place our decision on that ground.

■■ It is not altogether clear upon what theory the appellant places his right to have his claim allowed. The claim is for the exact amount of the unpaid rent for the full term. This would indicate that the claim was for rent. Such a claim is premature except as to the rent due under the terms of the lease.

Treff v. Gulko, 214 Cal. 591, 7 P.(2d) 697; Bradbury v. Higginson, 162 Cal. 602, 123 P. 797; Oliver v. Loydon, 163 Cal. 124, 124 P. 731. And in view of the action of the appellant in taking possession of the premises and rerenting, the claim could not be allowed as rent in any event after July 2, 1932. Respini v. Porta, 89 Cal. 464, 466, 26 P. 967, 23 Am. St. Rep. 488.

The lease in the above-quoted provisions gives the landlord an option to terminate the lease and to recover damages for the breach thereof together with the rent unpaid at the time of the breach including attorneys' fees and costs, or to relet the premises for the remainder of the term and in that event the lessee agrees to pay monthly in advance the amount of the monthly deficiency in rent. The appellant's position is thus stated:

"The lease herein provides for the recovery of damages by the lessor at the time a breach occurs, and also for a monthly deficiency in rent as it arises in case the lessor re-lets the premises. All remedies given the lessor are cumulative."

■ While it is true that the lease does provide that the remedies of the lessor shall be cumulative, it is clear that the lessor cannot at the same time claim two inconsistent rights and remedies. The law of California fixes the measure of damages for the breach of a lease in the event the landlord decides to rerent the premises for and on account of the tenant as the difference between the rent reserved in the lease and the rent received from the new tenant or tenants. Respini v. Porta, 89 Cal. 464, 466, 26 P. 967, 23 Am. St. Rep. 488, supra. The amount of this damage is recoverable at the end of the term. The Supreme Court of California in January, 1932, so stated the rule in the case of Treff v. Gulko, 214 Cal. 591, 7 P.(2d) 697, 698, supra, as follows:

"The measure of plaintiff's [landlord's] damage, it is true, may be the difference between the rent called for by the terms of the lease and the amount received by him upon his reletting the leased premises. The question, however, is, When does this damage accrue? * * * The question presented under the facts of this case is the right of the plaintiff to maintain any action whatever to recover damages for the defendant's breach of the terms of the lease until the expiration of the terms of the lease. The authorities are clearly to the effect that any action brought prior to the expiration of the term of the original lease is prematurely brought. The only exception to this rule appears to be that

when by express terms of the lease the tenant makes himself responsible for monthly, or other term deficits after the entry of the landlord, then an action will lie to recover these periodical deficits." Citing Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E. 97, 59 A. L. R. 1015.

In that case the Supreme Court of California also expressly approved the holding of the District Court of Appeal (297 P. 978) and adopted its opinion as a part of its own. In the quoted portion of the opinion, after citing the case of Phillips-Hollman, Inc., v. Peerless Stages, Inc., 210 Cal. 253, 291 P. 178, giving the rule of damages where the tenant had broken the lease, it is said:

" '2. He may take possession of the premises, relet the same, and recover from the tenant any damages suffered thereby. Such damages will be the difference between the amount secured on the reletting and the amount provided for in the original lease. If this alternative be selected, in the absence of a covenant in the lease to the contrary, and perhaps where the landlord has relet for the balance of the entire term (which latter point we do not here decide), the law is well settled that the landlord cannot recover in installments, but must bring his action at the expiration of the original term, at which time the damages for the first time can be ascertained. Oliver v. Loydon, 163 Cal. 124, 124 P. 731; Bradbury v. Higginson, 162 Cal. 602, 123 P. 797; Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E. 97, 98, 59 A. L. R. 1015. See, also, Respini v. Porta, 89 Cal. 464, 26 P. 967, 23 Am. St. Rep. 488.'

"In the present case, the respondent having elected to take possession of the premises and relet the same and to rest upon his action for damages, we must conclude, upon the authority of the last-quoted case, that his action was prematurely begun, and that the judgment awarding damages to him must be reversed."

See, also, upon the same subject, a decision by the District Court of Appeals of the Second Appellate District, Division 1, of California, Pacific States v. Rosenshine, 113 Cal. App. 266, 298 P. 155. It is clear then that at the time the appellant filed his claim for damages, his right thereto had not accrued under the law of California.

 In view of the fact that the landlord's right of action does not accrue until the termination of the lease and that the amount of recovery is uncertain until that time, can a claim therefor, or any portion thereof, be proved in the receivership proceeding? It will be observed that at the time the claim was presented for approval on July 29, 1932, that a month had not elapsed from the rerenting of the premises on July 5, 1932, and that the appellant has not predicated his claim upon the theory that he was entitled under the lease to payments month by month of the difference between the rent reserved and the rent received. It is suggested, but not decided, by the Supreme Court of California in Treff v. Gulko, supra, and in Phillips-Hollman, Inc., v. Peerless Stages, Inc., supra, that such a provision in the lease for monthly payments of the difference between the rent reserved in the lease and the monthly rental paid by the new tenant might give the landlord the right to recover each month the deficiency in rental for that month. It is unnecessary, however, to consider the effect of that provision in the lease for the reason that the appellant's claim for damages herein is predicated upon a right to the entire amount of damages suffered by the landlord because of the breach of the lease by the disaffirmance thereof by the receiver on July 2, 1932. If, then, the right of the landlord to recover damages for breach of the lease had not accrued under the law of California at the time the claim therefor was presented, the question is, How should the court act thereon where the ultimate purpose of the receivership is to distribute the assets of the corporation to its creditors? The rule applicable to such claims in a bankruptcy proceeding is not applicable to an equity receivership. Filene's Sons Co. v. Weed, 245 U. S. 597, 38 S. Ct. 211, 62 L. Ed. 497; Gardiner v. Butler Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505. The question in an equity receivership depends upon the nature of the claim and not upon the provisions of a statute, as in a bankruptcy case. The rule which should govern a court of equity in approving claims was carefully considered and stated by the Circuit Court of Appeals for the Second Circuit in Pennsylvania Steel Co. v. New York City R. R. Co., 198 F. 721, 739, an equity receivership to wind up the affairs of the corporation. The court held that claims which were contingent and uncertain could not be allowed. In stating the rule the court said:

"The real inquiry in getting at a basis for the distribution of an insolvent estate is whether the claims are reduced to dollars and cents. If they are so reduced or can be so reduced by the application of recognized principles they are entitled to share. If they are not they cannot share. And this not at all for any reason affecting their merits nor strictly speaking because they are contingent,

but because they are uncertain. So, without laying stress upon the question whether claims are (1) past due, (2) immature, or (3) contingent, the real way we should divide them with respect to the question of provability is into these two classes:

"(1) Claims of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estates;

"(2) Claims which are so uncertain that their worth cannot be so ascertained.

"The second class of claims cannot be proved. They may be highly meritorious, but they cannot share in the estate because their amounts cannot be ascertained."

This statement of the rule by the Circuit Court of Appeals of the Second Circuit seems to have won general approval and is cited with approval by the Supreme Court in Filene's Sons Co. v. Weed, 245 U. S. 597, 602, 38 S. Ct. 211, 62 L. Ed. 497, supra, and we will follow and apply it to the case at bar. As the right of the landlord to recover damages is too uncertain to justify recovery until the end of the term, it must be held to be too uncertain to form the basis of a claim therefor in an equity receivership (Pacific States Corp. v. Rosenshine, 113 Cal. App. 266, 298 P. 155), and consequently was properly disallowed by the trial court. As a basis for a present allowance of his claim, the appellant cites the decision of the District Court of the Eastern District of Michigan in Leo v. Pearce Stores Co., 57 F.(2d) 340, but that decision is based upon a measure of damages not applicable in California, namely, the difference between the rental value and the rent reserved, and hence is not applicable.

Appellant relies upon the decision of the Circuit Court of Appeals for the Second Circuit in Re Outfitters' Operating Realty Co., etc., 69 F.(2d) .90, 91, allowing the claim of a landlord for the breach of the lease in a bankruptcy case. A petition to the Supreme Court for writ of certiorari in that case was granted May 14, 1934. Irving Trust Co. v. A. W. Perry, Inc., 54 S. Ct. 778, 78 L. Ed. ——. The Supreme Court has not yet passed upon the merits. It is sufficient, however, for the purpose of this appeal to point out that that decision is not applicable to the case at bar because it is based upon a provision of the lease there involved that—

"the filing of any petition in bankruptcy or insolvency by or against the Lessee shall be deemed to constitute a breach of this lease, and thereupon, ipso facto, and without entry or other action by the Lessor, this lease shall become and be terminated; and, notwithstanding any other provisions of this lease, the Lessor shall forthwith upon such termination be entitled to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term hereof, less the fair rental value of the premises for the residue of said term."

There is no such provision in the lease in the case at bar; either as to the effect of a bankruptcy or receivership matter, or as to the measure of damages for a breach. It should be added that in the appellant's brief, it is said:

"It would seem that the trial court should have extended the time for the filing of appellant's claim until, at least, August 31, 1933, the date of the ruling of the court on the master's exceptions."

This suggestion was not made to the trial court and for that reason no error can be predicated upon it.

Order affirmed.