[Cite as *Plaza Dev. Co. v. W. Cooper Ents., L.L.C.*, 2014-Ohio-2418.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Plaza Development Company,                      :

        Plaintiff-Appellant,             :
        Cross-Appellee,

v.                                              :            No. 13AP-234
                             (C.P.C. No. 11CVH03-3226)

W. Cooper Enterprises, LLC                      :
c/o statutory agent William A. Cooper, Jr.                  (REGULAR CALENDAR)
et al.,                                         :

        Defendants-Appellees,            :
        Cross-Appellants,

                             :

SCCIP, Inc. c/o statutory agent
Christopher T. Scott,                           :

        Defendant-Appellee.             :

---

D E C I S I O N

Rendered on June 5, 2014

---

*Law Office of Jeffrey H. Jordan*, and *Jeffery H. Jordan*; *The Behal Law Group LLC*, and *Jack D'Aurora*, for Plaza Development Company.

*Dinsmore & Shohl LLP*, *Karen S. Hockstad*, and *Gregory P. Mathews*; *Timothy D. Kelly, P.A.*, and *Timothy D. Kelly*, for W. Cooper Enterprises, LLC, and Baja Sol Ohio, LLC.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Plaza Development Company ("Plaza"), from an entry of the Franklin County Court of Common Pleas granting

summary judgment in favor of defendants-appellees, W. Cooper Enterprises, LLC ("WCE"), and Baja Sol Ohio, LLC ("Baja Sol"), and denying Plaza's motion for summary judgment. WCE and Baja Sol (collectively "appellees") have filed a cross-appeal.

{¶ 2} In 1994, Plaza, as landlord, and DF&R Restaurants, as tenant, entered into a 20-year "Ground Lease Agreement" (hereafter "ground lease") for commercial property located at 1200 Noe Bixby Road, Columbus. The commencement date of the ground lease was October 1, 1994, and the ground lease provided for tenant to "use the Premises for the operation of a full-service Mexican restaurant, serving alcoholic beverages."

{¶ 3} On May 12, 1995, DF&R Restaurants assigned the lease to DF&R Operating Company ("DF&R"). On December 13, 2007, following a bankruptcy proceeding, DF&R assigned its interest in the ground lease to WCE. WCE simultaneously subleased the property to SCCIP, Inc. ("SCCIP"), which reopened the restaurant as "Don Pablo's." On February 26, 2009, WCE assigned its interest in the lease to Baja Sol, an affiliate of WCE, and Baja Sol began operating a Mexican restaurant on the premises.

{¶ 4} By letter dated November 24, 2009, Baja Sol notified Plaza that it "has ceased the restaurant operations at the * * * premises as of today. * * * It is Tenant's desire that the premises be re-let as soon as possible." The correspondence by Baja Sol further stated: "For now, Tenant intends to continue to pay rent and utilities, maintain its current insurance coverage * * * and maintain the security and alarm system."

{¶ 5} On May 15, 2010, El Triunfo, LLC ("El Triunfo") entered the premises and began to use, and make improvements to, the property. On May 27, 2010, Baja Sol and El Triunfo entered into a "sublease agreement." The agreement had a commencement date of June 1, 2010, and a termination date of September 30, 2014. Jose Fuentes ("Fuentes") personally guaranteed the agreement on behalf of El Triunfo.

{¶ 6} On November 5, 2010, an attorney for Plaza contacted counsel for appellees, indicating that a default balance was due under the lease. On November 24, 2010, Plaza commenced eviction proceedings in the Franklin County Municipal Court against appellees and El Triunfo for non-payment of rent and other costs due. In December 2010, appellees relinquished possession of the property, and Plaza dismissed the eviction proceedings.

{¶ 7}   On January 27, 2011, Plaza entered into a lease agreement ("the 2011 lease agreement") with El Triunfo, with rent obligation commencing on January 1, 2011.  The term of the lease was five years, with an option to renew.

{¶ 8}   On March 11, 2011, Plaza filed a complaint, naming as defendants WCE, SCCIP, and Baja Sol, and asserting causes of action for breach of contract or lease, promissory estoppel, and quasi-contract.  On December 16, 2011, Plaza filed an amended complaint, alleging causes of action for breach of contract, quasi-contract, fraudulent transfer, and alter ego/piercing the corporate veil.  Appellees subsequently filed a third-party complaint against El Triunfo and Fuentes.

{¶ 9}   On December 29, 2011, appellees filed a joint answer to the amended complaint, as well as a counterclaim.  In the counterclaim, appellees alleged causes of action for tortious interference with contractual relationship and civil conspiracy.  On April 6, 2012, the parties entered into a stipulation and order, whereby appellees agreed to pay "Partial Plaza Claims" in the amount of $47,343 for rents due under the ground lease prior to December 31, 2010.

{¶ 10} On May 9, 2012, appellees filed a motion for summary judgment, arguing in part that Plaza, by entering into the 2011 lease agreement with El Triunfo, terminated the ground lease with appellees by operation of law.  On June 11, 2012, Plaza filed a motion for partial summary judgment and a memorandum in opposition to appellees' motion for summary judgment.  In its memorandum in support, Plaza argued that appellees had breached the terms of the ground lease and that Plaza had made reasonable efforts to lease the property to another tenant and use the rents received from the new tenant to mitigate its damages.  Plaza sought to recover the rent owed by the tenants for the remainder of the term of the ground lease, with an offset for the amount of rent received by Plaza from the replacement tenant (El Triunfo). On June 21, 2012, appellees filed a motion for default judgment against El Triunfo and Fuentes, asserting that neither third-party defendant had filed a responsive pleading.  El Triunfo and Fuentes subsequently filed an answer and a counterclaim against Baja Sol.  On June 29, 2012, appellees filed a memorandum in opposition to Plaza's motion for partial summary judgment.

{¶ 11} On August 22, 2012, the trial court filed a judgment entry conditionally granting appellees' motion for default judgment, granting appellees' motion for summary

judgment, and denying Plaza's motion for partial summary judgment. In its decision, the trial determined that the May 27, 2010 agreement between Baja Sol and El Triunfo was a sublease and not an assignment; further, once Plaza entered into the 2011 lease agreement with El Triunfo, "it eliminated Plaza's right to further rent after January 1, 2011 from WCE and Baja."

{¶ 12} On September 5, 2012, Plaza filed a motion for reconsideration, which the trial court denied by entry filed September 11, 2012. Plaza and appellees subsequently filed cross-motions for attorneys' fees. On December 19, 2012, the parties filed an agreed entry in which appellees dismissed all claims against El Triunfo and Fuentes with prejudice, and El Triunfo and Fuentes dismissed their counterclaim with prejudice. The trial court filed an entry February 11, 2013, denying the parties' cross-motions for attorneys' fees.

{¶ 13} On appeal, Plaza sets forth the following three assignments of error for this court's review:

> I. The Trial Court Erred, To Plaintiff-Appellant Plaza Development Company's Prejudice, By Overruling Its Motion For Partial Summary Judgment.
>
> II. The Trial Court Erred, To Plaintiff-Appellant Plaza Development Company's Prejudice, By Sustaining Defendants-Appellees' Summary Judgment.
>
> III. The Trial Court Erred, To Plaintiff-Appellant Plaza Development Company's Prejudice, By Overruling Its Motion For Award Of Attorney Fees.

{¶ 14} On cross-appeal, appellees assert the following assignment of error:

> The trial court erred in finding that the agreement between Baja Sol Ohio, LLC and El Triunfo, LLC was a sublease instead of an assignment.

{¶ 15} On appeal, Plaza challenges rulings by the trial court denying its motion for partial summary judgment and granting appellees' motion for summary judgment. Pursuant to Civ.R. 56(C), a trial court shall grant summary judgment if the filings in the action, including pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This

court's review of a trial court's decision on summary judgment is de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 16} As noted under the facts, several different tenants have operated a restaurant on the commercial property at issue since the original parties executed the ground lease in 1994. In 2009, with approximately five years remaining on the original term of the ground lease, Baja Sol advised Plaza of its intention to cease its restaurant operations and expressed a desire for Plaza to relet the premises. Baja Sol continued to pay rent and other charges for a period of time. On May 27, 2010, Baja Sol entered into an agreement with El Triunfo (with Plaza's consent) for El Triunfo to operate a restaurant on the premises. However, in November 2010, El Triunfo fell behind on its rent obligations under its agreement with Baja Sol. Plaza subsequently entered into a five-year lease agreement with El Triunfo, effective January 1, 2011.

{¶ 17} In granting summary judgment in favor of appellees and denying Plaza's motion for partial summary judgment, the trial court addressed two primary issues: (1) whether the May 2010 agreement between Baja Sol and El Triunfo constituted a sublease or an assignment, and (2) whether appellees' liability to Plaza for rent and other obligations under the ground lease terminated as of the effective date (January 1, 2011) of the 2011 lease agreement between Plaza and El Triunfo.

{¶ 18} In its decision, the trial court first addressed the issue of the May 2010 agreement between Baja Sol and El Triunfo, which is the subject of appellees' cross-assignment of error. Appellees argued before the trial court that Baja Sol assigned its entire rights for the last four years of the ground lease to El Triunfo. For purposes of the instant appeal, we initially address the cross-assignment of error, in which appellees argue that the trial court erred in finding that the 2010 agreement between Baja Sol and El Triunfo was a sublease and not an assignment. Appellees argue that, notwithstanding the fact the parties' titled the May 27, 2010 document as "Sublease Agreement," the trial court erred in its analysis. According to appellees, the terms of that agreement show that the scope of El Triunfo's leasehold interest was just as broad as Baja Sol's interest, making the agreement an assignment.

{¶ 19} In general, the "distinction between an assignment of a lease and a sublease is that the former conveys the whole term, leaving no interest or reversionary interest in

the assignor, while the latter grants the subtenant an interest in the lease premises less than the lessee's or reserves to the lessee a reversionary interest in the term." *House of LaRose Cleveland, Inc. v. Lakeshore Power Boats, Inc.,* 8th Dist. No. 60904 (June 18, 1992). Under Ohio law, privity of contract does not exist between a lessor and sublessee. *Solomon Realty Co. v. Tim Donut U.S., Ltd., Inc.,* No. 2:08-CV-561 (S.D.Ohio Dec. 21, 2009). Thus, "a subtenant owes no responsibility to the original lessor because there is neither privity of contract nor privity of estate between the two." *House of LaRose. See also Zevchik v. Kassai,* 8th Dist. No. 71823 (Dec. 24, 1997) (noting that, "in a sublease, there is no privity of contract between the sublessee and the landlord—the lessee and the landlord continue their contractual relationship under the lease and lessee remains liable to the landlord for anything done by sublessee").

{¶ 20} In finding that the 2010 sublease agreement was not an assignment, the trial court held in part:

> While Baja has arguments that this was an assignment, the structure of the Sublease Agreement, repeated references in it to the 1994 "Prime Lease," and references to Baja as merely the "Sublessor" are among the points that tip the decision the other way. The Prime Lease still governed in May 2010 on most matters of substance, such as appropriate care for the premises. * * * Baja – not Plaza – retained "all rights and privileges as 'landlord' under the Prime Lease * * * and may enforce the same against Sublessee" under ¶ 2.2(b). Conversely, "Sublessee has all rights and privileges as 'tenant' under the Prime Lease with respect to the Premises and may enforce the same [only] against Sublessor." * * * As a matter of law this was a sublease.

{¶ 21} Upon review, we agree with the trial court that the contractual agreement entered into between Baja Sol and El Triunfo did not constitute an assignment but, rather, a sublease. The May 27, 2010 agreement, titled "Sublease Agreement" (hereafter "the 2010 agreement"), identifies Baja Sol as "Sublessor" and El Triunfo as "Sublessee," and references the February 26, 2009 assignment between WCE and Baja Sol. As noted by the trial court, pursuant to Section 2.2(b) of the 2010 agreement, the "Sublessor has all rights and privileges as 'landlord,' " while under Section 2.2(c) the "Sublessee has all rights and privileges as 'tenant.' " Pursuant to Section 2.2(e), the "Sublessee obtains * * * no more rights and privileges hereunder than Sublessor has as 'tenant' under the Prime

Lease with respect to the Premises." Further, in accordance with Section 4.2, the sublessee made rent payments to the sublessor (and not the lessee-landlord, i.e., Plaza). On the last page of the 2010 agreement, the signature of a Plaza representative appears beneath the following language: "THE UNDERSIGNED Landlord hereby consents to the terms of this Sublease." We note at least one Ohio court has found similar language and circumstances "precludes any claim that the transaction was an assignment of the original lease." *Stein Dev. Co. v. Franks,* 12th Dist. No. 7 (Sept. 1, 1982) (document that (1) identified parties as sublessors and sublessees, (2) required payment of rent by sublessee to sublessor (and not the original lessor), and (3) did not contain any clause whereby original lessor released the sublessor from his obligation to pay rent, but instead provided for lessor's "consent to the SUBLEASE of the premises," constituted a sublease agreement and not an assignment).

{¶ 22} Significantly, Baja Sol also reserved the right, in the event of a default by the sublessee, to "terminate this Agreement and Sublessee's right of possession of the Premises." Section 12.2(a). *See* Restatement of the Law 2d, Property, Landlord & Tenant, Section 15.1, Comment i ("The tenant has made a sublease, even though the transfer is initially for the balance of the term, if the right to possession of the leased property may return to him upon the occurrence of some event"); *Powder v. Neiss,* 18 Ohio Dec. 766 (C.P.1908) (lease agreement providing that property be "redelivered to [party who let the premises] if the rents were not paid" constituted a sublease and not an assignment). Here, the trial court did not err in characterizing the parties' agreement as a sublease and not an assignment.

{¶ 23} Accordingly, appellees' cross-assignment of error is not well-taken and is overruled.

{¶ 24} In considering Plaza's assignments of error, we initially address the second assignment of error, in which Plaza asserts the trial court erred in granting summary judgment in favor of appellees. More specifically, Plaza maintains that the trial court erred by failing to employ the parties' contracted damages formula as set forth under the ground lease.

{¶ 25} Under Ohio law, "leases are contracts and, as such, are subject to traditional rules governing contract interpretation." *Heritage Court L.L.C. v. Merritt,* 187 Ohio

App.3d 117, 2010-Ohio-1711, ¶ 14 (3d Dist.). A court's fundamental purpose in interpreting a contract is to "determine and carry out the intention of the parties, and the intention of the parties is presumed to lie in the language used in the lease agreement." *Id.*, citing *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 156 Ohio App.3d 65, 2004-Ohio-411, ¶ 29 (4th Dist.). Further, "[i]n interpreting the language of a lease agreement, common words are presumed to hold their ordinary meaning unless '(1) manifest absurdity results, or (2) some other meaning is clearly evidenced from the instrument.' " *Id.* at ¶ 14.

{¶ 26} The Supreme Court of Ohio has held "[a] lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease." *Frenchtown Square Partnership v. Lemstone, Inc.,* 99 Ohio St.3d 254, 2003-Ohio-3648, syllabus. This "duty to mitigate arises in all commercial leases of real property." *Id.* at ¶ 18. A lessor's efforts to mitigate "must be reasonable, and the reasonableness should be determined by the trial court." *Id.* at ¶ 21. With respect to the issue of damages, where a "breaching tenant caused harm such that the lessor's profitability is affected, then that harm is compensable to the extent it is proved." *Id.* at ¶ 19. Further, "the damage award should put the injured party in as good a position had the contract not been breached at the least cost to the defaulting party." *F. Ent., Inc. v. Kentucky Fried Chicken Corp.,* 47 Ohio St.2d 154, 159 (1976).

{¶ 27} Plaza argues that the parties in this case agreed, in the event of a breach, to calculate damages according to their own formula as provided under the terms of the ground lease. Specifically, Section 25(a) of the ground lease defines "Events of Default" to include "[a]ny failure by Tenant to pay the rental." Further, Section 25(b) of the ground lease agreement states in part:

> <u>Remedies</u>. In the event of any such default by Tenant, Landlord shall have all of the remedies available to it at law or in equity and Landlord shall also have the right, with or without terminating this Lease, to reenter the Premises and to remove all persons and property from the Premises. If Landlord shall so relet, without it being under any obligation to do so, then any rentals received by Landlord from such reletting shall be applied, first, to the payment of any reasonable cost of such reletting; second, to the payment of the cost of any reasonably necessary alterations and repairs to the Premises (excluding costs of redecorating for a new

tenant); and third, to the payment of rent and any other amount due and unpaid from Tenant hereunder. Notwithstanding any reletting without termination by Landlord because of any default by Tenant, Landlord may at any time after such reletting elect to terminate this Lease for any such default.

{¶ 28} Plaza argued before the trial court that, pursuant to the above provision of the ground lease, WCE's obligation to pay rent continued through the expiration of that lease, subject to an offset (i.e., payments received by Plaza from reletting to be credited against WCE's continuing obligation). By contrast, in their motion for summary judgment, appellees argued that Plaza's decision to enter into a new lease with El Triunfo terminated the ground lease by operation of law, thereby extinguishing any liability for further rent as of the effective date of the new lease. Appellees argue on appeal that Plaza, in reentering and reletting the premises to the existing tenant (El Triunfo), did not relet for appellees' account but, instead, for its own account.

{¶ 29} In its decision granting summary judgment in favor of appellees, the trial court determined that the 2011 lease agreement between Plaza and El Triunfo arose because Plaza "had a legal obligation to minimize or mitigate damages caused by their tenant's breach of the Prime Lease." The court further found, however, that "once the new Lease with El Triunfo was made it eliminated Plaza's right to further rent after January 1, 2011 from WCE and Baja." The trial court thus agreed with appellees' contention that Plaza's reletting of the premises via a new lease agreement " 'terminated the Old Lease by operation of law.' "

{¶ 30} In so holding, the trial court relied in part upon *Frenchtown Square* and *Dennis v. Morgan,* 89 Ohio St.3d 417 (Aug. 9, 2000). In *Frenchtown Square*, the Supreme Court noted that "certain real property leases are susceptible of contract-law principles." *Id.* at ¶ 16. Those cases recognize, in general, that landlords have a duty to mitigate their damages caused by a breach and that " '[l]essees are potentially liable for rents coming due under the agreement as long as the property remains unrented.' " *Id.* at ¶ 15, quoting *Dennis* at 417.

{¶ 31} We note that neither *Dennis* nor *Frenchtown Square* involve a lease provision, such as in the instant case, allowing reentry and reletting by a landlord following an event of default. The decision in *Frenchtown Square* recognizes, however,

that the common-law duty with respect to mitigation of damages, "like many others, may be changed by negotiation between the parties."  *B&G Props. Ltd. Partnership v. OfficeMax, Inc.,* 8th Dist. No. 99741, 2013-Ohio-5255, ¶ 23, citing *Frenchtown Square* at ¶ 20 ("barring contrary contract provisions, a duty to mitigate damages applies to all leases").  *See also Dennis* at 417 (addressing "whether, *absent specific provisions in the lease,* a landlord's election to terminate a lease agreement releases a tenant from liability for rent not yet due at the time of eviction"). (Emphasis added.)  Thus, Ohio courts will give effect to a lease provision whereby a tenant agrees to remain liable for rent owed for the duration of the lease regardless of reletting.  *B&G Props.* at ¶ 26.

{¶ 32} In the instant case, in light of specific language in the ground lease permitting Plaza to reenter the premises and relet in the event of default, we disagree with the trial court's conclusion that appellees' liability terminated at the time Plaza relet the premises in January 2011.  Specifically, under Section 25 of the ground lease, Plaza reserved the right, "with or without terminating" the lease, to reenter the premises and relet, applying "any rentals received" from such reletting "to the payment or rent and any other amount due and unpaid from Tenant hereunder."  Notwithstanding common-law doctrine as to whether a landlord's act of reletting may constitute a surrender by operation of law, Plaza acted in accordance with the terms of the ground lease in reletting the premises and seeking to avail itself of the damages remedies under Section 25.  Where a landlord "relets pursuant to a power reserved in the lease, the reletting cannot constitute a surrender by operation of law." 2-17 Powell on Real Property, Section 17.05[1].  *See also Yates v. Reid,* 36 Cal.2d 383, 385 (1950) (where provision in lease allowed reentry by landlord and reletting upon tenant's abandonment, the reletting of the premises by the landlord "did not result in a surrender of the lease by operation of law.  The provision in the lease was valid and controlling"); *Song Lee v. Ferguson,* 795 P.2d 1220, 1222 (Wyo.1990) ("There being a provision in the lease for payment of any deficiency by the lessee/appellant upon reletting, appellees did not surrender.").  The issue as to whether Plaza relet for its own account, as asserted by appellees, is not dispositive in light of the remedies provision in the ground lease which permitted such reletting by the landlord.  *See Yates* at 385 ("It is immaterial that the plaintiff reentered and relet for his own account [where] [t]he terms of the lease gave him the right to do so if he desired.").

{¶ 33} Because Plaza's conduct in reentering and reletting the premises was not inconsistent with the terms of the ground lease, we conclude that the trial court erred in its determination that the remedies afforded under Section 25 were not available to Plaza under Ohio law.  Accordingly, the trial court erred in granting summary judgment in favor of appellees.  We, therefore, sustain Plaza's second assignment of error and remand this matter to the trial court to apply, in the first instance, the remedies provision set forth in the ground lease.

{¶ 34} Under its remaining assignments of error, Plaza contends the trial court erred in denying its motion for partial summary judgment and in denying its motion for attorneys' fees, i.e., Plaza argues that the trial court erred in failing to find, pursuant to Section 41(d) of the ground lease, it was the "successful party" for purposes of being reimbursed for reasonable attorneys' fees and disbursements.  In light of our disposition of the second assignment of error, remanding this matter for the trial court to address the remedies provision of the ground lease, the issues raised by Plaza under the first and third assignments of error are moot.

{¶ 35} Based upon the foregoing, Plaza's second assignment of error is sustained, Plaza's first and third assignments of error are rendered moot, and appellees' cross-assignment of error is overruled.  The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

SADLER, P.J., and T. BRYANT, J., concur.

T. BRYANT, J., retired of the Third Appellate District,
assigned to active duty under authority of the Ohio
Constitution, Article IV, Section 6(C).

_____